**Warren BOWLES, Plaintiff–Appellant,**

**v.**

**NEW YORK CITY TRANSIT AUTHORITY, Defendant–Appellee,**

**Oliver Cato, Individually and as Labor Relations Representative, Consolidated–Defendant–Appellee.**

No. 06–3101–cv.

United States Court of Appeals, Second Circuit.

July 10, 2008.

Stephen J. Savva, New York, NY, for plaintiff-appellant Warren Bowles.

Robert K. Drinan (Martin B. Schnabel, General Counsel, on the brief), New York City Transit Authority, Brooklyn, NY, for defendants-appellees.

PRESENT: ROGER J. MINER, JOSEPH M. McLAUGHLIN, and JOSÉ A. CABRANES, Circuit Judges.

## SUMMARY ORDER

Plaintiff-appellant Warren Bowles appeals from an Opinion and Order of the District Court granting summary judgment in favor of defendants-appellees on, *inter alia*, Bowles's claims that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq;* the U.S. Constitution, *see* 42 U.S.C. § 1983, and New York State's Human Rights Law, N.Y. Exec. Law § 296(10) by (1) discriminating against him on the basis of his religion and (2) retaliating against him after he filed a civil suit based on defendants' alleged religious discrimination. *Bowles v. N.Y. City Transit Auth.,* No. 00 civ 4213, 2006 WL 1418602 (S.D.N.Y. May 23, 2006). We assume the parties' familiarity with the underlying facts, procedural history, and issues raised on appeal.

"We review the District Court's grant of summary judgment *de novo.*" *Jeffreys v. City of New York,* 426 F.3d 549, 553 (2d Cir.2005). Summary judgment is appropriate only if "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). "A fact is material ... when it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could [have] return[ed] a verdict for the [appellant]." *Jeffreys,* 426 F.3d at 553 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (internal citations and quotation marks omitted). In reviewing the record, we "construe the evidence in the light most favorable to the [appellant], drawing all inferences in [appellant's] favor." *Id.* "The burden of demonstrating that no material fact exists lies with the party seeking summary judgment." *Id.*

To make out a prima facie case of religious discrimination, a plaintiff alleging a violation of Title VII or New York's Human Rights Law must prove that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 481 (2d Cir.1985) (internal quotation marks omitted), *aff'd* 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986); *accord Baker v. Home Depot,* 445 F.3d 541, 546 (2d Cir.2006); *see also Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997) (noting that "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII").

The District Court, finding that Bowles had failed to offer any evidence tending to establish that he had suffered any adverse employment action as a result of the Transit Authority's alleged failure to accommodate Bowles's religious needs in a prompt manner, concluded that Bowles had failed to make out a prima facie case on his claim of religious discrimination. *Bowles,* 2006 WL 1418602, at *10. We agree with the District Court's determination.

For purposes of Title VII's substantive anti-discrimination provisions,[1]

---

1. *See, e.g., Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (distinguishing between the prohibitions imposed by "Title VII's substantive provision and its anti-retaliation provision").

"an adverse employment action" ... is generally characterized as a "materially adverse change in the terms and conditions of employment" ... [and] may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."

*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir.2006) (quoting *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) (internal citations and alteration omitted)); *see also Galabya*, 202 F.3d at 640 ("To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." (internal quotation marks omitted)).

As the District Court correctly noted, "the only employment action whatsoever that Bowles claims to have suffered in connection with [the Transit Authority's] alleged failure to accommodate him is [his station supervisor's] comment that he should seek a job in the private sector if he wanted weekends off, which he construes as a threat of termination." *Bowles*, 2006 WL 1418602, at *10; Pl. Br. 49. We agree with the District Court that these comments, standing alone, are insufficient to establish the third prong of Bowles's prima facie case in light of Bowles's failure to offer any evidence tending to establish that the station supervisor's remarks ever ripened into any further action—let alone any action adversely affecting "the terms and conditions of [Bowles's] employment." *Zelnik*, 464 F.3d at 225. Accordingly, we affirm the District Court's grant of summary judgment in favor of defendants on Bowles's religious discrimination claims.

To make out a prima facie case of unlawful retaliation, a plaintiff must prove that: (1) he participated in a legally protected activity; (2) his employer knew of the protected activity; (3) an adverse employment action ensued; and (4) a causal connection existed between the protected activity and the adverse employment action. *See, e.g., Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006). If the plaintiff meets this initial burden, "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action ... [O]nce an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005).

The District Court determined that (1) Bowles had offered evidence sufficient to meet his initial burden; and (2) defendants had offered legitimate non-discriminatory explanations for the actions of which Bowles complained; but (3) Bowles, in failing to offer anything "more than conclusory statements in support of his claim that Defendants' proffered reasons are pretextual," had failed to meet his burden of rebuttal. *Bowles*, 2006 WL 1418602, at *14.

■ Bowles alleges a number of adverse employment actions—terminations from work in March 2002 and October 2003; defendant Oliver Cato's denial of two grievances filed by Bowles; and the Transit Authority's failure, among other things: to provide Bowles with lunch relief during the summer of 2003, to reinstate Bowles in a timely manner following the March 2002 termination, to pay Bowles for vacation days and seniority benefits that accrued while he was awaiting reinstatement, and to convey in a timely manner information relating to Bowles's application for retirement benefits and medical insurance.

Defendants, in turn, offer the following explanations for each of these incidents. Bowles was terminated in March 2002 and October 2003 based on his claimed inability to work—and resulting absences from work—following a March 2001 back injury. Cato denied Bowles's grievances because these were untimely under the relevant Collective Bargaining Agreement and, in any event, Bowles was not eligible for the relief he sought (transfer to a position that required less physical labor but greater qualifications). Bowles missed lunch for six days because, inadvertently, a replacement elevator operator was not made available; however, the problem was remedied directly after Bowles notified the Transit Authority, and Bowles was paid for the six lunch periods through which he was required to work. The parties' disagreement regarding Bowles's eligibility to receive additional pay for the vacation days and seniority benefits that accrued following his March 2002 termination stemmed from "legitimate ... contractual disagreements," Def. Br. 81, namely, the parties' differing positions as to "when Bowles was physically able to return to work as well as whether and when a job was available that fit his medical restrictions," id. at 80. The delay in returning Bowles to work following his March 2002 termination was attributable; in the first instance, to Bowles's own delay in following up with the Transit Authority and, thereafter, to routine administrative requirements of the Transit Authority. The Transit Authority was legitimately not able to verify the claims of injury that Bowles made in his application for Workers' Compensation: Bowles's original injury "was not witnessed, [and] [Bowles] did not leave work ... [or] receive any medical treatment"; the subsequent flare-up, meanwhile, occurred while Bowles was at home. Id. at 81–82.

Upon review of the record, we note that Bowles proffers no evidence establishing any connection between his religious accommodation suit and the adverse actions of which he complains. Nor does he proffer any evidence tending to establish that defendants' explanations for these incidents were pretextual or otherwise illegitimate. Accordingly, we perceive no error in the District Court's determination that Bowles failed to create a material issue of fact sufficient to defeat defendants' motion for summary judgment on Bowles's retaliation claims.

■ We also conclude that the District Court did not err in granting summary judgment on Bowles's claim under 42 U.S.C. § 1983 for violation of his rights under the U.S. Constitution. Bowles appears to assert this claim against the Transit Authority alone. "In order to impose § 1983 liability upon a municipality [or municipal agency], a plaintiff must demonstrate that any constitutional harm suffered was the result of a municipal policy or custom." *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992). Bowles presented insufficient evidence that the Transit Authority had a policy that discriminated against Sunday Sabbath observers or that someone with policymaking authority for the agency discriminated against him.

Having considered all of Bowles's claims and found them to be lacking in merit, we AFFIRM the judgment of the District Court.